IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SARA ALICE GILBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:11cv331-TFM |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION**

**I. Introduction**

Plaintiff Sara Alice Gilbert ("Gilbert") applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., alleging that she is unable to work because of a disability. Her application was denied at the initial administrative level. Gilbert then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined by the Social Security Act. The ALJ, therefore, denied the plaintiff's claim for benefits. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

United States Magistrate Judge. The case is now before the court for review pursuant to 42 U.S.C. § 405(g) and § 1631(c)(3). Based on the court's review of the record in this case and the parties' briefs, the court concludes that the Commissioner's decision is due to be affirmed.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. § 404.1520, §416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. Administrative Proceedings

Gilbert was 52 years old during the hearing and completed the tenth grade of high school. (R. 47-48.)  Gilbert has prior work experience as a short-order cook. (R. 37, 49, 57.)  Gilbert alleges that she became disabled on April 9, 2007, from back and neck pain, carpal tunnel syndrome, high blood pressure, and headaches. (R. 50-51, 54, 56.)  After the hearing, the ALJ found that Gilbert suffers from severe impairments of mild obesity; bilateral carpal tunnel syndrome, mild right, moderate on the left; mild degenerative disc disease of the cervical spine; and gastroesophageal reflux disease and non-severe impairments of benign

hypertension and history of asthma. (R. 24.) The ALJ also found that Gilbert is unable to perform her past relevant work, but that she retains the residual functional capacity to perform less than the full range of light work. (R. 30.) Testimony from the vocational expert led the ALJ to conclude that a significant number of jobs exist in the national economy that Gilbert may perform, such as work as a ticket seller, garment sorter, and mail clerk. (R. 33.)

### IV.  The Plaintiff's Claims

As stated by Gilbert, she presents the following issue for the court's review:

> Whether the final decision of the Commissioner of the Social Security Administration denying benefits to Plaintiff is supported by substantial evidence and whether improper legal standards were applied.
>
> Specifically, the ALJ erred in failing to fully develop the record and in failing to find favorably under the medical vocational rules.

(Doc. No. 13, Pl. Brief, p. 1.)

### V.  Discussion

#### A.  The Duty to Develop the Record

Gilbert argues that the ALJ should have resolved inconsistencies in the record by re-contacting Dr. Kishore Chivulka, a consultative psychologist, eliciting additional testimony from a medical expert, or obtaining another consultative examination. Specifically, Gilbert claims that an ambiguity exists because the results of a nerve conduction study were not incorporated into Dr. Chivulka's report to the Commissioner. Gilbert argues that "in light of the fact that Dr. Chivulka's reference to [the nerve conduction study] ends in a sentence fragment . . . it does appear to have been done afterwards. . . ." (Doc. No. 13, p. 6.) Gilbert also contends that Dr. Chivulka's determination that she is able to use both hands constantly

for pushing, pulling, handling, fingering, and feeling is inconsistent with the results of the nerve conduction study. (*Id.*, p. 7.)

An administrative law judge has a duty to develop a full and fair record. *Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985). When there is a conflict, inconsistency, or ambiguity in the record, the ALJ has an obligation to resolve the conflict, giving specific reasons supported by the evidence as to why he accepted or rejected an opinion regarding the plaintiff's capacity for work. *See Baker v. Astrue*, No. 1:11cv35-CSC (M.D. Ala. 2012). *See also Battle v. Astrue*, 243 Fed. Appx. 514, 523 (11th Cir. 2007).

During the hearing on September 4, 2008, the ALJ determined that an evaluation by a consultative neurologist and an EMG nerve conduction study of Gilbert's hands and arms were necessary. (R. 58.) The ALJ subsequently ordered a consultative examination and additional testing. The medical records indicate that, on September 25, 2008, Dr. Chivulka conducted an examination of Gilbert, administered a nerve conduction study and completed both a neurological evaluation for disability report and a medical source opinion form. (R. 315-323.)

Dr. Chivuluka's report concerning his clinical impression of Gilbert's evaluation does contain one isolated sentence fragment. Specifically, Dr. Chivuluka noted:

> Presents for evaluation of multiple complaints. History is not consistent. Clinical examination does not show significant pathology. Nerve conduction studies and EMG of both upper extremities was performed and t

(R. 316.) Gilbert places great emphasis on this grammatical error, arguing that the sentence fragment establishes that Dr. Chivuluka did not review the nerve conduction study before

5

entering his findings in the report and medical source opinion form. Dr. Chivuluka's notes, however, clearly indicate that "[n]erve conducting studies and EMG of both upper extremities w[ere] performed" before he prepared the disability report. (*Id*.) More importantly, the medical records indicate that Dr. Chivuluka was the administrator of the nerve conduction study referenced in the report. Thus, the medical evidence clearly establishes that Dr. Chivuluka was aware of the results of the nerve conduction study at the time he prepared his report.

The court finds that Dr. Chivuluka's summary of the nerve conduction study is not in any way inconsistent with the conclusions in the disability report or his findings in the medical source opinion form. In his summary of the nerve conduction study, Dr. Chivuluka found as follows:

> NCS:
>
> 1. Delayed peak latency, normal SNAP amplitude and slow nerve conduction velocity in fingers to wrist segment of the right median sensory nerve. Delayed peak latency, low SNAP amplitude (D2) only and normal nerve conduction velocity in the fingers to wrist segment of the left median sensory nerve.
>
> 2. Delayed peak latency, low SNAP amplitude and slow nerve conduction velocity in fingers to wrist segments of the right and left ulnar sensory nerves.
>
> 3. Prolonged terminal latencies, normal F-latencies, normal CMAP amplitude and normal nerve conduction velocity of the right and left median motor nerves.
>
> 4. Normal terminal and F-latencies, normal CMAP amplitude and normal nerve conduction velocity of the right ulnar motor nerve. Prolonged terminal latency, normal F-latency, normal CMAP amplitude and normal nerve conduction velocity of the left ulnar

>motor nerve.

EMG:

Normal resting activity, normal insertional activity, normal motor unit amplitude and duration with normal recruitment pattern in all tested muscles of the right and left upper extremities. Normal needle EMG of right and left cervical paraspinal muscles.

Conclusion:

These electrophysiological findings are indicative of moderate carpal tunnel syndrome, moderate on left and mild on right. There is no evidence for ulnar neuropathy.

(R. 323.)

In the medical source opinion form, Dr. Chivuluka found that Gilbert has the residual functional capacity to lift and carry ten to fifteen pounds constantly and twenty pounds frequently; push or pull and reach overhead with both arms and handle constantly; and handle, finger, and feel with both hands constantly. Gilbert argues that the ALJ should have obtained additional information from Dr. Chivuluka or another consultative physician to determine whether a finding that she is able to use both hands constantly is consistent with the results of the nerve conduction study indicating that she suffers from moderate carpal tunnel syndrome on the left and mild carpal tunnel syndrome on the right. Although Dr. Chivuluka did not differentiate between Gilbert's left and right hands when determining she is able to use handle, finger, and feel constantly, Dr. Chivuluka's findings that Gilbert is right handed, is able to oppose thumbs to fingertips and suffers from moderate carpal tunnel syndrome on the left coupled with mild on the right without ulnar neuropathy supports his conclusion that Gilbert is able to perform certain hand functions on a constant basis. This court therefore

7

concludes that there is no ambiguity or inconsistency with respect to Dr. Chivuluka's findings concerning Gilbert's ability to use her hands.

Even assuming *arguendo* that Dr. Chivuluka's opinion was inconsistent with the objective medical evidence, the court concludes that the ALJ adequately developed the record by consulting a medical expert, Dr. James Anderson, at the supplemental hearing. "Medical experts are considered experts in the Social Security disability programs and their opinions may be entitled to great weight if their opinions are supported by the evidence in the record." *Skrzynski v. Astrue*, No. 2:11cv36-SPC, 2011 WL 5357818, *6 (M.D. Fla. 2011) (citing 20 C.F.R. §§ 404.1512(b)(6), 404.1527(f)(2)(I)(iii), 413.912(b)(6), 416.927(f)(2)(l)(iii), and SSR 96-6p). During the hearing, the following exchange occurred:

| | |
|---|---|
| Representative : | Doctor, if I understood your testimony correctly, the claimant has more problems with her left hand than with her right? |
| Medical Expert: | Yes, sir. |
| Representative: | And would that – the problems she has, would that affect her ability for fine or gross manipulation or both? |
| Medical Expert: | It would both limit her use of that hand for both (INAUDIBLE) to only occasional. |
| Representative: | Okay, I have nothing further, Your Honor. |
| ALJ: | That on the left, is that what you're -- |
| Medical Expert: | Yes, sir on the left. On the right she'd be able to use it frequently. |

(R. 39-40.) Thus, the medical expert testified that Gilbert would be able to perform both fine and gross manipulation with her left hand occasionally and with her right hand frequently.

Dr. Anderson's testimony is supported by the objective medical records. (R. 321-323.) The court therefore concludes that the ALJ adequately developed the record and resolved any inconsistencies in Dr. Chivuluka's medical records concerning Gilbert's ability to use her hands by consulting a medical expert.  The court also notes that the ALJ included Dr. Anderson's opinion that the claimant would be able to occasionally perform fine and gross manipulation with her left hand and frequently perform those activities with her right in his hypothetical question to the vocational expert.

Given the medical records indicating that Gilbert is right-hand dominant with carpal tunnel syndrome which is mild on the right and moderate on the left and Dr. Anderson's opinion that Gilbert would be able to use her right hand frequently and her left hand occasionally, the court concludes that the ALJ did not err in failing to seek an additional consultative examination or otherwise develop the record.  *See Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988) (The ALJ is not required to order a consultative examination unless the record demonstrates that an examination is necessary for the ALJ to render a decision.).

### B.  The Medical-Vocational Guidelines

Gilbert contends that the ALJ improperly applied the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2 ("Grids") because Rule 201.14 establishes that she is disabled.  According to Gilbert, the ALJ improperly concluded that she could perform light work when, under the Guidelines, her exertional limitations establish she can perform no more than sedentary work.

Exclusive reliance on the grids is appropriate only when a claimant has no non-exertional impairments that significantly limit her basic work activities. *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995); *Sryock v. Heckler*, 764 F.2d 834 (11th Cir. 1985).

> [I]n determining residual functional capacity only exertional limitations are considered . . . If a claimant has nonexertional impairments that significantly limit the ability to do basic work activities . . . then the grid regulations do not apply. . . . However, when both exertional and nonexertional work impairments exist the grids may still be applicable. [N]on–exertional limitations can cause the grid to be inapplicable only when the limitations are severe enough to prevent a wide range of gainful employment at a designated level. Therefore, when both exertional and nonexertional limitations affect a claimant's ability to work, the ALJ should make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. Courts will review this determination only to determine whether it is supported by substantial evidence.

*Sryock*, 764 F.2d at 836 (internal citations omitted).

The crux of Gilbert's claim concerns the ALJ's determination that she could perform less than the full range of light work. Gilbert argues that the ALJ should have found her to be capable of no more than sedentary work based on her obesity and postural limitations, such as her inability to heel, toe, or tandem walk and her significant difficulty in squatting and rising, as well as her upper extremity limitations. The Social Security Administration has developed a sequential evaluation process to determine if a plaintiff is disabled. 20 C.F.R. §§ 404.1520 and 416.920. It is the plaintiff's responsibility to demonstrate an inability to return to her past relevant work. *Lucas, supra.* After a plaintiff has shown that she cannot perform her past relevant work, the burden then falls upon the Commissioner to show that there are other jobs in the national economy that the plaintiff can perform. *Jones v. Apfel*, 190

F.3d 1224, 1228 (11th Cir. 1999).

The ALJ determined by expert vocational testimony that there are other light jobs that Gilbert could perform in the national economy within the limitations of her impairments. During the hearing, the following exchange between the ALJ and vocational expert occurred:

> Q: Okay. Well, for our first hypothetical then, let me ask you to assume a person of the claimant's age, she's in the age range of 51 to 52, and she has a 10th grade education, and this past relevant work history. She is right-hand dominant, based on previous testimony. Now, for our hypothetical, I'd like to adopt the limitations set out at Exhibit 12F, pages four to six. I believe that's the relevant pages. We will modify that slightly based on Dr. Anderson's testimony. Briefly indicated, as far as handling and fingering, that would be occasionally for the left and frequently for the right. Now, based on that information, could you give me your opinion whether such a person could do – oh, I'm going to assess mild to moderate pain by the way, which occasionally interferes with concentration, persistence and pace. Let me just make a note. . . . All right, based on that information, could you give me your opinion of whether such a person would be capable of doing any of the claimant's past relevant work?
>
> A: Your Honor, past relevant work would be precluded.
>
> Q: Okay. Now are there any other jobs that such a person could do?
>
> A: Yes, Your Honor.
>
> Q: Okay. If you could give some examples.
>
> A: All right. Several examples would be ticket seller, this is DOT number 411.407-030, this job is light and unskilled work with an SVP: 2, 1,000 of these jobs exist regionally, regionally referring to the State of Alabama; 200, 700,000 or more exist nationally. A second example would be a garment sorter, this is DOT number 222.687-014, this [] job is light unskilled work with an SVP: 2,  2,000 of these jobs exist regionally; 429,000 or more exist nationally. A third example, would be a mail clerk, with the exception of U.S. postal service employees, this is DOT number

>       209.687-026, this is light, unskilled work with an SVP: 2. . . .

(R. 42.)

During the colloquy, the ALJ incorporated Exhibit 12F, which includes Dr. Chivuluka's medical source opinion regarding Gilbert's limitations. In the medical source opinion, Dr. Chivuluka found that Gilbert is able to lift or carry ten to fifteen pounds constantly and twenty pounds frequently; push or pull with both arms and legs constantly; climb, balance, crouch, crawl occasionally; stoop and kneel frequently; and handle, finger, feel, talk, hear, and reach overhead constantly. (R. 317-318.) The consultative neurologist also found that Gilbert is able to work in extreme cold, heat, humidity, and vibration frequently, as well as work around fumes, dust, or poor ventilation occasionally. (R. 319.) In a handwritten note on page 6 of the opinion, Dr. Chivuluka advises the reader to "pl[ease] refer to dictated notes." (R. 318.) In the typewritten and/or dictated report which was prepared on the same day as the medical source opinion, Dr. Chivuluka provides more specific details concerning Gilbert's limitations. For example, he found that Gilbert weighs 201 pounds and her flexion and extension movements of the thoraco lumbar spine are limited due to body habitus. (R. 315-316.) Dr. Chivuluka also found that Gilbert's gate was normal and that she has significant difficulty in squatting and raising from the squatting position. (R. 316.) He concluded his report as follows:

>   Physical CE emphasis Sheet addition:
>
>   Based on my medical findings, in my opinion about the claimant's ability, despite the impairments, to do work related activities such as standing, walking, lifting, carrying, handling, sitting, hearing, speaking and traveling are possible.

(*Id*.)   Thus, the ALJ met his responsibility by incorporating the report which referred to Gilbert's specific physical limitations into his hypothetical question to the vocational expert concerning her ability to perform light work jobs.  *See Jones*, *supra.*

In addition, the ALJ relied heavily on the opinion of Dr. Chivuluka when determining Gilbert has the residual functional capacity to perform light work.  This court's review of the medical records indicates that the ALJ's findings concerning Gilbert's limitations are consistent with Dr. Chivuluka's opinion.  Consequently, the ALJ's reliance on Dr. Chivuluka's opinion regarding Gilbert's work restrictions is supported by substantial evidence.[4]   Based on the foregoing, the court concludes that the ALJ's determination that, based on Gilbert's age, education, work experience, and residual functional capacity for light work, with restrictions which include simple grasping, fine manipulation and feel with her right hand frequently and her left hand occasionally; climbing, balancing, crouching, and crawling occasionally; and working in or around extreme temperatures and other environmental factors frequently, there are jobs that exist in significant numbers in the national economy that she can perform is supported by substantial evidence.  This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards.  *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

---

[4] Gilbert argues that the ALJ erred by failing to properly designate the weight to which he assigned each medical opinion.  After reviewing all the medical evidence and Gilbert's testimony, the ALJ determined that Gilbert was not disabled.  The ALJ heavily relied on the opinion of Dr. Chivuluka in his analysis.  Even though the ALJ did not specifically state the specific weight he assigned to each piece of evidence, the ALJ recited all the applicable law and detailed all the relevant medical evidence.  More importantly, even if it was error, it is harmless. The opinion of the ALJ shows that he carefully considered the evidence in this case and was extremely familiar with it.  A remand is not required on this basis.

## VI. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled. Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate final judgment will be entered.

Done this the 28th day of February, 2012.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE